UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

MIAMI DIVISION

Case No: _____

JUAN JIMENEZ

    Plaintiff,

v.

JACKSON HEALTH SYSTEM,
a Miami Dade County Public Trust,

    Defendant.

_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, JUAN JIMENEZ, by and through his undersigned counsel, sues the Defendant, JACKSON HEALTH SYSTEM, a Miami Dade County Public Trust, and alleges as follows:

### JURISDICTION AND VENUE

1. This is an action for damages and to remedy violations of the rights of MR. JIMENEZ for interference and retaliation in violation of the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. §§ 2601, et seq to redress injuries done to him by the Defendant, JACKSON HEALTH SYSTEM ("Defendant").

2. The unlawful acts which gave rise to this Complaint occurred within Miami-Dade County, Florida during the Plaintiff's employment with Defendant, making venue proper in this District pursuant to 28 U.S.C. § 1391.

### PARTIES

3. At all times material hereto, Plaintiff has been a citizen and resident of Miami-Dade County, Florida and is otherwise *sui juris*.

1

4. At all times material hereto, Plaintiff was an individual, who had rights under the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. §§ 2601, and, as such, Plaintiff is a member of a protected class, because the terms, conditions, and privileges of his employment were altered because of his request for FMLA leave.

5. Defendant is a government agency. At all times material hereto, Defendant was Plaintiff's employer as defined by law.

6. At all times material hereto, Defendant was a covered employer within the meaning and contemplation of the FMLA, 29 U.S.C. §2611(4)(A), in that it is a public agency as therein defined.

7. Plaintiff was qualified for FMLA leave in that he had worked more than 1250 hours for Defendant in a twelve (12) month period immediately preceding his application for FMLA leave.

## GENERAL ALLEGATIONS COMMON TO ALL COUNTS

8. Defendant hired Plaintiff as a registered nurse on March 11, 2011. In July 2018, the Defendant transferred Plaintiff to Turner Gilford Knight Corrections and Rehab ("TGK") where he resumed his role as a registered nurse.

9. As a registered nurse, Plaintiff's primary duties and responsibilities included caring for patients and supervising other employees to ensure patients received adequate care.

10. Plaintiff was qualified for his position as a registered nurse based on his experience and training.

11. After the Plaintiff's transfer to TGK, Plaintiff experienced a resurgence of on-going back problems that previously required surgery. Plaintiff sought FMLA leave, but the Defendant was anything but cooperative.

12. On November 8, 2019, the Plaintiff submitted his request for FMLA leave. While out on leave and awaiting approval from his health insurance provider for another surgery, the Plaintiff attended physical therapy sessions which improved his condition somewhat. Wanting to return to work, the Plaintiff requested, and his doctor approved, a return to work on an intermittent basis. In the meantime, the Defendant denied the Plaintiff's requested FMLA leave from December 18, 2019 to January 18, 2020, but subsequently approved the leave after the Plaintiff appealed.

13. The Defendant also approved the Plaintiff for intermittent FMLA leave until April 17, 2020. Unfortunately, the Defendant began to retaliate against the Plaintiff for requesting FMLA leave.

14. The Plaintiff returned to work on January 19, 2020. In February 2020, Mr. Tunji Bankole, Associate Nurse Manager, Ms. Theoc, Nurse Manager for Operations, Ms. Turner, Nurse, and Ms. Rico, Nurse Manager for Behavior Health, interrogated the Plaintiff regarding an incident where a patient suffered a seizure during the Plaintiff's break. When he was questioned as to why he left a seizing patient to go on break, the Plaintiff explained that he had been on break for at least 30 minutes before the patient had the seizure. Before the Plaintiff left for break, he notified the nurse assigned to that patient that he was leaving in order to ensure there was coverage. Despite this explanation, verifiable by the Plaintiff's timecards, the Defendant blamed the Plaintiff until he finally broke down and cried due to frustration.

15. Two days later, despite having been assured that the Plaintiff was not going to be written up in order to circumvent the Plaintiff's right to the presence of a Union representative, the Defendant issued a write-up to the Plaintiff for the incident involving the seizing patient. At the same time, the Defendant issued a write-up to the Plaintiff for a comment he made to Ms. Rico a full year earlier. This write-up was in violation of the Defendant's policy requiring all write-ups

be issued within 28 days of the incident. Adding further insult to injury, the Defendant issued a write-up to the Plaintiff for absenteeism and tardiness – the very absences and delayed arrivals that were covered by the approved intermittent FMLA leave.

16. In March 2020, in the middle of a global pandemic, Ms. Rico further retaliated against the Plaintiff by short-staffing his floor. Ms. Rico repeatedly and continuously removed the LPN previously assigned to the Plaintiff's Unit K21, the busiest of the six units and the main unit for behavioral health issues and floated the LPN elsewhere. This left the Plaintiff doing the work of two people. The Plaintiff emailed back and forth with Ms. Rico and suggested a float log, so they had visibility as to who was floating, when, and from which unit. The Plaintiff even offered to make the list himself. Ms. Rico dismissed the Plaintiff's request, saying, "there will be no list," despite both the negative impact on the Plaintiff's patients caused by the decrease in staff availability as well as the fact that this change violated the Union agreement requiring equal division of workloads.

17. In May 2020, the Plaintiff asked Ms. Rico to transfer him to a shift to replace a nurse who was retiring. Ms. Rico falsely claimed that "there was no position." Ms. Rico denied the Plaintiff the position despite the Plaintiff having the qualifications and the seniority.

18. In May 2020, Ms. Rico issued another write-up to the Plaintiff for tardiness and absenteeism, claiming that some of the Plaintiff's FMLA paperwork was incorrect. The Plaintiff immediately worked to correct any issues raised by the Defendant with respect to his FMLA paperwork, and each time he corrected the issue, the Defendant manufactured another problem.

19. On July 1, 2020, the Plaintiff applied for intermittent FMLA leave through Matrix, Defendant's third-party leave administrator, which approved the leave. Ms. Rico overrode

Matrix's approval of the intermittent FMLA leave. In response, the Plaintiff filed a grievance with his Union. As its final act of retaliation, the Defendant terminated the Plaintiff in September 2020.

20. Plaintiff has engaged the undersigned attorney to prosecute his claims and is entitled to recover his attorney's fees from Defendant pursuant to statute.

## COUNT I: FMLA INTERFERENCE

21. Plaintiff realleges and incorporates by reference the allegations in paragraphs 1 through 20 as if fully set forth herein.

22. Plaintiff had the right to request FMLA leave on multiple occasions with the first time being in November 2019.

23. The Plaintiff qualified for FMLA leave in November 2019, but Defendant initially did not approve Plaintiff's FMLA leave from December 18, 2019 to January 18, 2020. After Plaintiff appealed this denial, Defendant subsequently approved the leave. In July 2020, the Defendant also denied the Plaintiff's request for intermittent FMLA leave. In other words, the Defendant interfered with Plaintiff's right to take FMLA.

24. When Defendant did not allow the Plaintiff to use FMLA leave, it interfered with Plaintiff's right to the requested leave, or its equivalent, and thus violated the FMLA.

25. As a direct result of the Defendant's denial of Plaintiff's right to use FMLA leave, he has suffered, and will continue to suffer, a loss of wages, employment benefits, and other compensation denied or lost to him by reason of Defendant's violation. Defendant's conduct was not done in good faith, and Plaintiff is therefore entitled to liquidated damages in an amount equal to his loss of wages, employment benefits, and other compensation.

26. Plaintiff is entitled to an award of his reasonable attorney's fees and costs incurred in this action pursuant to 29 U.S.C. §2617(a)(3).

WHEREFORE, Plaintiff hereby requests judgment in his favor and against Defendant for (a) damages for lost wages, employment benefits, and any other compensation denied or lost to Plaintiff by reason of Defendant's violation of the FMLA, plus interest on such sum, pursuant to 29 U.S.C. § 2617(a)(1)(A)(i) and (ii); (b) liquidated damages pursuant to 29 U.S.C. § 2617(a)(1)(A)(iii); (c) equitable relief as this Court deems appropriate pursuant to 29 U.S.C. § 2617(a)(1)(B); (d) Plaintiff's costs, expert witness fees, and attorney's fees pursuant to 29 U.S.C. § 2617(a)(3); and (e) such other and further relief as this Court deems just and proper.

## COUNT II: FMLA RETALIATION

27. Plaintiff realleges and incorporates by reference the allegations in paragraphs 1 through 20 as if fully set forth herein.

28. Plaintiff had the right to request FMLA leave on multiple occasions with the first time being in November 2019.

29. The Plaintiff qualified for FMLA leave in November 2019, but Defendant initially did not approve Plaintiff's FMLA leave from December 18, 2019 to January 18, 2020. After Plaintiff appealed this denial, Defendant subsequently approved the leave. In July 2020, the Defendant also denied the Plaintiff's request for intermittent FMLA leave. In other words, the Defendant interfered with Plaintiff's right to take FMLA.

30. The Defendant, particularly Ms. Rico, began to unjustly harass and write-up the Plaintiff and ultimately terminated his employment in retaliation.

31. The Defendant's treatment and ultimate termination of the Plaintiff constituted an adverse employment action.

32. Plaintiff's action in requesting his FMLA leave was a "protected activity" under the FMLA.

33. Plaintiff's request for FMLA leave was, at a minimum, a motivating factor in Defendant's treatment of Plaintiff and decision to terminate his employment.

34. Defendant's purported reason(s), if any, for treatment of Plaintiff as well as terminating Plaintiff's employment are pretextual.

35. As a direct result of Plaintiff's treatment and termination, Plaintiff has suffered, and will continue to suffer a loss of wages, employment benefits, and other compensation denied or lost to him by reason of Defendant's violation. Defendant's conduct was not done in good faith, and Plaintiff is therefore entitled to liquidated damages in an amount equal to his loss of wages salary, employment benefits, and other compensation.

36. Plaintiff is entitled to an award of his reasonable attorney's fees and costs incurred in this action pursuant to 29 U.S.C. §2617(a)(3).

WHEREFORE, Plaintiff, hereby requests judgment in his favor and against Defendant for (a) damages for lost wages, employment benefits, and any other compensation denied or lost to Plaintiff by reason of Defendant's violation of the FMLA, plus interest on such sum, pursuant to 29 U.S.C. § 2617(a)(1)(A)(i) and (ii); (b) liquidated damages pursuant to 29 U.S.C. § 2617(a)(1)(A)(iii); (c) equitable relief as this Court deems appropriate pursuant to 29 U.S.C. § 2617(a)(1)(B); (d) Plaintiff's costs, expert witness fees, and attorney's fees, pursuant to 29 U.S.C. § 2617(a)(3); (e) and such other and further relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted this 1st day of November, 2021

By: /s/ *Michelle Cohen Levy*
Michelle Cohen Levy, FBN 0068514
The Law Office of Michelle Cohen Levy, P.A.

4400 N. Federal Highway
Lighthouse Point, Florida 33064
P: (954) 651-9196
Michelle@CohenLevyLegal.com
Counsel for Plaintiff